IN THE UNITED STATES DISRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA     :     Criminal Action No. 21-53 (LPS)

           vs.                   :

JAMES CROSSAN                  :

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant James Crossan, by her attorney, Thomas A. Dreyer, Esquire, hereby respectfully submits a Sentencing Memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives contained in 18 U.S.C. Section 3553(a). She herein contends that a term of imprisonment of 60 months is sufficient but not greater than necessary to comply with the provisions of Section 3553(a).

### Advisory Guidelines

The Federal Sentencing Guidelines ("FSGs") are advisory. *United States v. Booker*, 125 S.Ct. 738, 756 (2005). They are just one of several equally important sentencing factors outlined in 18 U.S.C. Section 3553(a).

In *United States v. Colon*, 474 F.3d 95, 97 (3d Cir.2007), the Third Circuit outlined the post-*Booker* status of the FSGs by stating:

> [S]entences now must be reasonable taking into account all of the factors in 18 U.S.C. [Section] 3553(a) (section 3553(a)") of which the now advisory guidelines are but one. Thus, after *Booker*, the guidelines are, in a sense, doubly diminished in significance, first because they are only advisory, and second because the courts must give increased attention to the other sentencing factors in section 3553(a).

In *United States v. Kennedy*, 554 F.3d 415, 423 (3d Cir.2009), the Third Circuit\

indicated:

> Since *Booker*, district judges have substantial discretion to impose
> sentences anywhere within the statutory range, as long as those
> sentences are reasonable under our deferential standard of review
> for abuse of discretion.   We expect that district judges will
> examine the particular facts of each case in fashioning a just
> sentence without getting bogged down in formalistic technicalities.
> Sentencing is not a mathematical calculation; it is a human
> enterprise that requires wisdom, judgment and old-fashioned
> common sense.   To the extent the plain language of the Guidelines
> - including its Commentaries and Application Notes - would lead
> to unfair results, we repose our confidence in district judges to
> apply fairly and justly the factors set forth in 18 U.S.C. Section
> 3553(a), which may require variances from the Guidelines range.

The primary directive in Section 3553(a) is for sentencing courts to "impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph 2."   Section 3553(a)(2) lists these purposes as:

> (A)  to reflect the seriousness of the offense, to promote respect for
> the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and,
>
> (D)   to provide the defendant with needed educational or vocational
> training, medical care, or other correctional treatment in the
> most effective manner.

This is known as the "Parsimony Provision".

Section 3553(a) further directs sentencing courts to consider the following

factors in determining the sentence minimally sufficient to comply with the purposes

enumerated in Section 3553(a)(2):

> 1)  the nature and circumstances of the offenses and the history and
> characteristics of the defendant;

-2-

2) the kinds of sentences available;

3) the kinds of sentences and the sentencing range established by the FSGs;

4) any pertinent policy statement issued by the Sentencing Commission which is in effect on the date that the defendant is sentenced;

5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,

6) the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1) and (a)(3) through (a)(7).

A sentencing court is given discretion by other statutory provisions as well. Under 18 U.S.C. Section 3582(a), imposition of a term of incarceration is subject to the following limitation:   in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to 'recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation". (Emphasis added.) *See also United States v. Manzella*, 475 F.3d 152, 156-61 (3d Cir 2007).   Under 18 U.S.C. Section 3661, "*No limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". (Emphasis added.)

A sentencing court must consider <u>all</u> of the Section 3553(a) factors, and not just the FSGs, in exercising its discretion in determining a sentence which is sufficient but not greater than necessary to meet the goals of sentencing.   In *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.2006), the Third Circuit instructed the district court to comply with the following three-step sentencing process:

1. Calculate the defendant's guideline range precisely as was done pre-*Booker*;

2. Formally rule on both parties' departure motions and state on the record whether it is granting a departure based on a specific guideline provision and how that departure affects the guideline calculation; and,

3. Exercise its discretion by considering the relevant Section 3553(a) factors in setting the sentence it imposes regardless whether the sentence varies from the sentence calculated under the FSGs.

*See also United States v. Grier, 585 F.3d 138, 141-42* (3d Cir.2009).   In other words, the district court is free to make its own reasonable application of the Section 3553(a) factors and to reject, after due consideration, the advice of the FSGs.   *United States v. Langford*, 516 F.3d 205, 215 (3d Cir.2008).

Moreover, in *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 455 (2007), the Supreme Court rejected any requirement that an extraordinary variance from the guideline range must be justified by extraordinary circumstances, thereby strongly reinforcing the sentencing court's discretion to tailor a sentence to the particular facts and circumstances of each individual case, regardless of where its sentence lies in relation to the guideline range.

### Application of the Statutory Sentencing Factors to the Instant Case

The following factors must be considered in determining what length of sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing:

### 1.  The Nature and Circumstances of the Offense and the History and Characteristics of The Offender

#### (A)  Nature and Circumstances of the Offense

A recitation of the facts of Ms. Crossan's criminal conduct is outlined in Paragraphs 24-44 of the Presentence Investigation Report ("PSR") which was revised on November 30, 2021.   Victim D.B. lived in Oregon and Victim J.O. lived in Idaho.   At no time

-4-

did Ms. Crossan physically meet these young men or travel to Oregon or Idaho in an attempt to meet with them. At no time did she physically injure them or threaten them with violence.

On June 12, 2020, Ms. Crossan was arrested pursuant to a Criminal Complaint. She agreed to a recorded interviewed which lasted approximately three hours. She cooperated fully with the FBI special agents. Among other things, she waived the *Miranda* warnings, gave them the passwords to her numerous social media accounts and helped them unlock her cell phone. In addition, she also explained to them her mistaken understanding of Delaware law: as long as she was not more than 6 years older than the minors with whom she was communicating on social media sites, she believed that she was doing nothing illegal.

Ms. Crossan did not object to the government's request for pretrial detention. She has been incarcerated at the Federal Detention Center ("FDC") in Philadelphia since her arrest.

On July 27, 2021, an Indictment charging Ms. Crossan with two counts of Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. Section 2422(b) was filed. The parties subsequently entered into a written Memorandum of Plea Agreement. On September 10, 2021, she entered a plea of guilty to a one-count Information charging her with Receipt of child pornography in violation of 18 U.S.C. Section 2252(A)(a)(2) and (b). The mandatory minimum term of imprisonment for this violation is 5 years.

Sentencing is scheduled for December 21, 2021.

**History and Characteristics of Ms. Crossan**

Ms. Crossan was born on July 19, 1997 and is 24 years of age. She is single and has no children. She is engaged to be married to Felipe Almeida, a citizen and resident of

-5-

Brazil.  Upon the completion of her term of imprisonment, she intends to move to Brazil so that marry and live with Mr. Almeida.

The instant case is Ms. Crossan's first contact with the criminal justice system. She has no other arrests, no other pending charges, no juvenile adjudications and no adult convictions.  See Paragraphs 77-82 of the PSR.

Ms. Crossan was born James D. Crossan.  Her father is James R. Crossan.  Her grandfather is James A. Crossan.

Ms. Crossan had a very difficult childhood.  On November 10, 2005, when she was 8 years old, the New Castle County Family Court awarded custody of her, his sisters, Destiny Crossan and Amber Angell, and her brother, Brandon Angell, to the Delaware Division of Family Services ("DFS").  Her father and mother, Rebecca Smith, sold drugs and abused drugs in the presence of the children.  Her father failed a drug screening, violated his probation and was jailed on three separate occasions after the DFS case was initiated.  Her father beat up her mother multiple times.  The DFS case was opened because of serious allegations of physical, mental, emotional and sexual abuse of the children by her parents  A psychiatrist at the A.I. Dupont Behavioral Health Center had 'grave concerns for their mental health'.  As a result, she was raised by her grandfather and his partner of many years, Gail Tidwell.

According to a Trauma Focused Psychological Assessment prepared by two psychologists at the A.I. DuPont Hospital for Children on January 23, 2006 when she was in the third grade, Ms. Crossan had an Individualized Education Plan due to difficulties in writing; she had been taken to a hospital emergency room in March 2002 after her mother kicked her in the butt, causing her to trip and hit her abdomen on a table; she had been hit on her butt with an open

-6-

hand and a belt by both parents; she saw her father choke her mother so badly that Brandon had to call 911 for emergency assistance; and she had made significant behavioral, emotional and academic gains since going to live with her grandfather.

When Ms. Crossan was working full-time jobs as a teenager at a diner and at an Amazon Fulfillment Center, she had to place a lock on the door of her bedroom at her grandfather's house because her drug-addicted father stole the medication given to her when her wisdom teeth were extracted and her video games.  She eventually realized that her parents wanted nothing to do with her and, in 2012, when she was just 14, she ended all contact with them.

Ms. Crossan graduated from William Penn High School in June 2015.  She was an honor roll student for the first marking period of the 2011-2012 school year.  She completed a 80-hour plumbing course at Delaware Technical Community College in September 2018.

Ms. Crossan worked full time (40 hours per week – 4 10-hours shifts) at the Amazon Fulfillment Center in Middletown from November 2015 to March 2020.  When the COVID-19 pandemic started in March 2020, she volunteered to work two extra shifts (60 hours per week – 6 10-hour shifts).  She picked and packed items for shipment and she was involved with quality control.  She was also an 'Ambassador' who trained new employees.  Her goal was to become a member of management.

Ms. Crossan was a volunteer fireman at the Port Penn Fire Company for two years.  She completed a CPR course, a hazardous materials awareness course, a hazardous materials first responder at the awareness level course, a 36-hour basic firefighting skills course and a 24-hour structural firefighting skills course.  She devoted approximately 10 hours each

week to this volunteer activity.

Ms. Crossan was a member of the Delaware Army National Guard from the fall of 2014 to July 2015.   She joined while still in high school.

At no time has Ms. Crossan abused drugs or alcohol and at no time has she received treatment for drug or alcohol abuse.

Ms. Crossan has a valid Delaware driver's license.

Ms. Crossan participated in numerous one-hour group sessions at the FDC as outlined in Paragraph 105 of the PSR.

Ms. Crossan has made four suicide attempts at the FDC.

During his imprisonment, Ms. Crossan's grandmother, Miss Youngblood, died on November 30, 2020 and her great aunt, Bonnie Crossan, died on May 16, 2021.   She was unable to attend the memorial services.

Due to the COVID-19 pandemic, Ms. Crossan was placed in quarantine for 18 days upon her arrival at the FDC on June 12, 2020 and the entire facility was placed in 24-hour lock-down from October 21, 2020 to December 10, 2020.   In addition, she was unable to take courses or obtain employment.

Ms. Crossan is currently transitioning from the male gender to the female gender.   She has struggled much of her life to find herself amidst her the terrible household in which she was raised as a young child and the psychological disconnect between her subconscious and her body.   At the FDC, she has talked to several mental health professionals about her desire to transition from male to female.   Beginning in September 2020, she has seen Dr. Daniels on a weekly basis.   She was diagnosed with Gender Dysphoria in Adolescents and

-8-

Adults. She requested to start hormone replacement therapy; Dr. Daniels approved this request. In January 2021, she began to take an androgen blocker and estrogen. She has been on hormone replacement for about a year.

Mr. Dreyer will be supplying the Court with a Psychosexual Evaluation.

## 2. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

### (A) To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

A sentence of imprisonment of 60 months clearly meets the objectives of reflecting the seriousness of the offense, promoting respect for the law and providing just punishment for the offense.

### (B) To afford adequate deterrence to criminal conduct

A sentence of imprisonment of 60 months is sufficient to achieve the goals of general deterrence and specific deterrence. As far as specific deterrence is concerned, she has no other arrests and has committed no other crimes.

### (C) To protect the public from further crimes of the defendant

The goal of protecting the public from further crimes committed by Ms. Crossan will be achieved by a sentence of imprisonment of 60 months. She has committed no other crimes in her life.

### (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Ms. Crossan will greatly benefit from the psychological and medical care in aiding her transition to being a female which will be provided by the BOP. It currently provides mental health treatment and hormone replacement therapy to her. The continuation of these

services will assist her in no longer having to struggle within herself regarding her external

identity in the world and she will give her a much higher level of self-esteem.   They will

tremendously aid her rehabilitation and re-entry into society.

### 3.  The Kinds of Sentences Available

A sentence of imprisonment is available.   18 U.S.C. Section 3581.   A fine is

available (although Ms. Crossan is represented by court-appointed counsel).   21 U.S.C. Section

841(a)(1) and (b)(1)(A).

### 4.  The Sentencing Range Established by the Sentencing Commission

The PSR calculates the Guideline Range of Imprisonment as follows:

A.   Victim D.B.

1.   A Base Offense Level of 32 pursuant to U.S.S. G. Sections 2G2.1(a) and
2G2.2(c)(1).

2.   A two-level increase because the offense involved a minor who had attained
the age of 12 years but who had not attained the age of 16 years pursuant to U.S.S.G. Section
2G2.1(b)(1)(B).

3.   A two-level increase because the offense involved the commission of a sexual
act or sexual contact pursuant to U.S.S.G. Section 2G2.1(b)(3).

4.   A two-level increase because, for the purpose of producing sexually explicit
material, the offense involved the use of a computer or an interactive computer service to
persuade, induce, entice, coerce or facilitate the travel of a minor to engage in sexually explicit
conduct or to otherwise solicit participation with a minor in sexually explicit conduct pursuant to
U.S.S.G. Section 2G2.1(b)(6)(B).

5.   A two-level increase Ms. Crossan obstructed justice by deleting data from
her electronic devices pursuant to U.S.S.G. Section 3C1.1.

6.   Adjusted Offense Level – 40

B.   Victim J.O.

1.   A Base Offense Level of 32 pursuant to U.S.S.G. Sections 2G2.1(a) and

2G2.2(c)(1).

2.   A two-level increase because the offense involved the commission of a sexual act or sexual contact pursuant to U.S.S.G. Section2G2.1(b)(3).

3.   A two-level increase because, for the purpose of producing sexually explicit material, the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce or facilitate the travel of a minor to engage in sexually explicit conduct or to otherwise solicit participation with a minor in sexually explicit conduct pursuant to U.S.S.G. Section 2G2.1(b)(6)(B).

4.   A two-level increase because Ms. Crossan obstructed justice by deleting data from her electronic devices pursuant to U.S.S.G. Section 3C1.1.

5.   Adjusted Offense Level – 38

C.   Multiple Count Adjustment

1.   Increase by two offense levels pursuant to U.S.S.G. 3D1.4

2.   Combined Adjusted Offense Level – 42

3.   A three-level decrease for acceptance of responsibility pursuant to U.S.S.G. 3E1.1.

4.   Total Offense Level – 39

5.   Criminal History Category 1 – no criminal history points.

6.   Range – 262 to 327 months

7.   Effective range – 240 months because the statutory maximum term of imprisonment for Receipt of child pornography is 20 years.

See Paragraphs 46-76 and 117 of the PSR.

This calculation is wrong!   The correct calculation is:

1.   Total Offense Level – 35

2.   Criminal History Category I

3.   Range – 168 to 210 months

-11-

See Ms. Crossan's Objections to the PSR dated November 5, 2021, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit "A".

### 5. Pertinent Policy Statement

There are no applicable pertinent Policy Statements.   Although Ms. Crossan tried to cooperate on two separate occasions, the government did not pursue these attempts.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

There are no unwarranted sentencing disparities.

### 7. The Need to Provide Restitution to Any Victims of the Offense

Ms. Crossan is liable for restitution.   See Paragraphs 123-124 of the PSR.

### Proposed Statement of Reasons Pursuant to 18 U.S.C. Section 3553(a) for Downward Departure and Variance

The Court should impose a sentence which departs from the Guideline Range of Imprisonment of 262 to 327 months because the PSR incorrectly gives her a two-level enhancement for obstruction of justice and a two-level enhancement based on the age of D.B. She did not obstruct justice and D.B. was 16 years of age when her criminal commenced on January 20, 2019.

The Court should impose a sentence which varies from the Guideline Range of Imprisonment Range of 262 to 327 month for the following reasons:

1.  Ms. Crossan has no other contacts with the criminal justice system.

2.  She was raised in a family environment so abusive, violent and unstable that the State of Delaware was compelled to remove her and her siblings from her parents' household and place her with her grandfather and his partner for her own protection.

3.  She received a two-level enhancement because she used a computer.  See

-12-

Paragraphs 56 and 64 of the PSR.   The Court has the discretion to vary from the range calculated, in part, by the use of this enhancement because "virtually all child pornography offenders use computers".   *See United States. v. Husmann*, 765 F.3d 169, 172 (3d Cir.2014).

       4.   She was a full-time gainfully employed, productive and tax-paying member of society from November 2015 to her arrest on June 12, 2020.

       5.   She volunteered to serve her local community as a firefighter for two years.

       6.   She served her country as a member of the Delaware Army National Guard for 10 months.

       7.   According to the Psychosexual Evaluation, she:

           A.   Poses a low risk of any type of sexual recidivism.

           B.   Does not meet the criteria for Pedophilic Disorder or any other sexual disorder.

           C.   Meets the criteria for Post-Traumatic Stress Syndrome and Major Depressive Disorder.

           D.   Has a provisional diagnosis for Autism Spectrum Disorder.

           E.   Does not have Antisocial Personality Disorder.

           F.   Is at an elevated risk of being a victim of bullying and/or violence while incarcerated.

       8.   She has received no disciplinary misconducts at the FDC.

       9.   She is extremely remorseful for her criminal conduct.

       10.   She has strong support from Mr. Almeida and her members of her family.

## Conclusion

The Court should consider every convicted person as an individual and every case as a unique study in human failings which sometimes mitigate and sometimes magnify the crime and punishment to ensue. *United States v. Gunter*, 527 F.3d 282, 285 (3d Cir.2008); *United States v. Castro-Valenzuela*, 304 Fed.Appx. 986, 989 (3d Cir.2008). Ms. Crossan respectfully requests a sentence of a term of imprisonment of 60 months. She also requests that the Court recommend to the BOP that:

1.   In the event that the Court imposes a term of imprisonment longer than 60 months, she is incarcerated at a facility which the BOP has designated as a female facility which regularly houses and treats transexuals or, if this request cannot be accommodated, at FCI Petersburg - Medium (it has a voluntary Sex Offender Management Program).

2.   She receives credit for time-served from June 12, 2020 to the present.

3.   Upon completion of her term of imprisonment, she is permitted to relocate to Brazil for the service of her term of supervised release so that she can marry Mr. Almeida.


**/S/ Thomas A. Dreyer**
Thomas A. Dreyer, Esquire
30 Running Brook Road
Glen Mills, PA  19342
610-742-7883
Attorney for Defendant James Crossan

Dated:   December 4, 2021

-14-

## CERTIFICATE OF SERVICE

Thomas A. Dreyer, Esquire hereby certifies that he served true and correct copies of the foregoing Defendant James Crossan's Sentencing Memorandum upon the persons listed below on the date listed below by the Electronic Court Filing ("ECF") System:

Carly A. Hudson, Esquire
Assistant United States Attorney
Hercules Building
1313 North Market Street
P.O. Box 2046
Wilmington, DE  19801

Butch L. Williams
U.S. Probation Officer
824 Market Street
Fourth Floor
Wilmington, DE  19801

/s/ Thomas A. Dreyer
Thomas A. Dreyer, Esquire
30 Running Brook Road
Glen Mills, PA  19342
610-742-7883
Attorney for Defendant James Crossan

Dated:   December 4, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA    :    Criminal Action No. 21-53 (LPS)
    :
vs.    :
    :
JAMES CROSSAN    :

### DEFENDANT'S OBJECTIONS TO THE
### PRESENTENCE INVESTIGATION REPORT

Defendant James Crossan, through his attorney, Thomas A. Dreyer, Esquire,
hereby objects to the Presentence Investigation Report ("PSR") as follows:

1.    Page Two of the PSR indicates in part that Ms. Crossan's education is
unknown.  To the contrary, she graduated from William Penn High School on June 8, 2015.

2.    Paragraph 25 indicates in part that she continued to communicate with
Victim D.B. through early 2020 when she was 23 years old.  To the contrary, her last
communication with D.B. was when she was 22.  She was born on July 19, 1997 and turned 23
on July 19, 2020 during her incarceration at the Federal Detention Center.

3.    Paragraphs 46-48, 59-60 and 67-68 indicate that she receives a two-level
increase for obstruction of justice pursuant to U.S.S.G. Section 3C1.1.  Paragraphs 47, 60 and 68
further state that, in her post-arrest interview, she stated D.B. contacted her at some point in early
2020 and informed her that the FBI was investigating her and, in response, she admitted to
deleting data from her electronic devices.

According to U.S.S.G. Section 3C1.1:

If (1) the defendant willfully obstructed or impeded, or attempted to
obstruct or impede, the administration of justice with respect to the
investigation, prosecution, or sentencing of the instant offense of

EXHIBIT "A"

> conviction, and (2) the obstructive conduct related to (A) the
> defendant's offense of conviction and any relevant conduct; or (B)
> a closely related offense, increase the offense level by **2** levels.

The FBI conducted two investigations of her.   In October 2018, it started the first investigation regarding federal offenses 'unrelated' to the investigation in the instant case. It investigated her from sending threatening messages on social media about firebombing an abortion clinic and burning mosques and synagogues.   See Paragraph 24 of the PSR.   This investigation led directly to the investigation in the instant case.   See Paragraph 25 of the PSR. No charges generated by the first investigation have been filed against her.

To the contrary, she does not receive this enhancement.   Her post-arrest interview by two FBI agents took place on June 12, 2020 and lasted approximately three hours.   At no time during this interview did she admit to deleting data from her electronic devices in response to D.B. informing her that the FBI was investigating her.   She stated the following:

A.   She thought that she had been arrested and was being interviewed because of events related to the first investigation.

B.   FBI and ATF agents showed up at her apartment in September 2019 (as part of the first investigation).   She later terminated her Instagram account and other accounts because she did not want to get into any more trouble.   She was 'scared straight' by this incident.   She subsequently woke up at night from dreams about the federal authorities knocking on her door.

C.   She terminated accounts and deleted stuff because she grew out of role-playing and cross-dressing as a woman on the computer (at the time, she identified as a male).   She 'moved on' and 'tried to move on' with her life.

D.    She last messaged D.B. sometime in 2019 (she did not remember the month).  He told her that the FBI had showed up at his house and went through his phone.  He told her to go fuck herself.  He was upset at her.  She responded, "My bad; I'm not a terrorist" (referring to the first investigation).  He told her not to talk to him.  She told the FBI interviewers that she thought D.B.'s comments were related to her being a terrorist.

The obstruction of justice enhancement does not apply to her.  First, a review of her post-arrest interview clearly proves that she did not tell the FBI interviewers that she deleted data from her electronic devices in response to D.B. informing her that the FBI was investigating her.  Second, her termination of electronic accounts after being confronted by FBI and ATF agents at her apartment in September 2019 was part of the first investigation and is not any way, shape or form related to her offense of conviction and any relevant conduct (Receipt of child pornography) or a closely related offense.

4.    Paragraph 54 indicates that she receives a two-level increase because the offense involved a minor who had attained the age of 12 years but not attained the age of 16 years pursuant to U.S.S.G. Section 2G2.1(b)(1)(B).  It further states that D.B. advised that he first started communicating with her in 2017 when he was 15 and a freshman in high school.

To the contrary, she does not receive this enhancement.  According to the Information, her criminal conduct commenced on January 20, 2019 and ended on July 16, 2019.  D.B. was born on December 11, 2002 and turned 16 on December 11, 2018.  Therefore, he was 16 (and not 15 or younger) between January 20, 2019 and July 16, 2019.

5.    Paragraph 60 indicates that she receives a two-level increase for obstructing justice.  As noted previously, she does not receive this enhancement.

-3-

6.    Paragraph 61 indicates that the Adjusted Offense Level (Subtotal) for Count One involving D.B. is 40.   To the contrary, it is 36.

7.    Paragraph 68 indicates that she receives a two-level increase for obstructing justice pursuant to U.S.S.G. Section 3C1.1.   As noted previously, she does not receive this enhancement.

8.    Paragraph 69 indicates that the Adjusted Offense Level (Subtotal) for Count One involving Victim J.O. is 38.   To the contrary, it is 36.

9.    Paragraphs 70-72 indicate there is a two-level increase from 40 to 42 for the Multiple Count Adjustment pursuant to U.S.S.G. Section 3D1.4(a), (b) and (c).   To the contrary, there is a two-level increase from 36 to 38 for the Multiple Count Adjustment.

10.    Paragraph 73 indicates that the Combined Adjusted Offense Level is 42. To the contrary, it is 38.

11.    Paragraph 74 indicates that she receives a five-level increase for engaging in a pattern of activity involving prohibited sexual conduct pursuant to U.S.S.G. Section 4B1.5(b)(1).   It further states that she is a repeat and dangerous sex offender against minors.

To the contrary, she does not receive this enhancement.   According to Section 4B1.5(b), this increase applies "[i]n any case in which the defendant's instant offense is a covered sex crime".   According to Application Note 2:

> **Covered Sex Crime as Instant Offense of Conviction** – For purposes of this guideline, the instant offense of conviction must be a covered sex crime, *i.e.,* (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense; (iii) chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual, or (iv) 18 U.S.C. [Section]

-4-

1591; or (B) an attempt or a conspiracy to commit any offense
described in subdivisions (A)(i) through (iv) of this note.   (Emphases
added)

She pleaded guilty to Count One of the Information charging her with Receipt of
child pornography in violation 18 U.S.C. Section 2252A(a)(2) and (b), a Chapter 110 offense.
This is her instant offense of conviction.   The United States Sentencing Commission explicitly
excluded Receipt of child pornography as a covered sex crime and, therefore, this enhancement
does not apply to her.

12.   In addition, Paragraph 74 indicates that the offense level is 47.   To the
contrary, it is 38.

13.   Paragraph 76 indicates that the Total Offense Level is 43.   To the contrary,
it is 35.

14.   Added to Paragraph 83 should be the following facts:   she was born James.
D. Crossan; her father is James R. Crossan; and her grandfather is James A. Crossan.

15.   Paragraphs 92, 98 and 100 indicate in part that her partner is Phillipe
Almeida.   To the contrary, his first name is 'Felipe'.

16.   Paragraph 92 indicates in part that she and Mr. Almeida consummated their
relation in February 2020 and that he is the only male sex partner she has had.   To the contrary,
at no time have she and Mr. Almeida consummated their relationship and she has never had a
male sex partner.

17.   Added to Paragraph 106 should be the following facts:   she worked full-time
at the Amazon Fulfillment Center (40 hours per week - 4 10-hour shifts); when the COVID-19
pandemic struck, she voluntarily started to work two extra shifts (60 hours per week – 6 10-hour

shifts); as part of her duties, she was an 'Ambassador' who trained new employees; and her goal was to become a member of management.

      18.   Paragraph 110 indicates that, based upon a Total Offense Level of 43 and Criminal History Category I, the Guideline Range of Imprisonment is life.   It further states that, because the statutory maximum term of imprisonment is 20 years, the range is 240 months.   To the contrary, based upon a Total Offense Level of 35 and Criminal History Category I, the range is 168 to 210 months.

      19.   Paragraph 122 indicates that the fine range is from $50,000.00 to $250,000.00 pursuant to U.S.S.G. Section 5E1.2©(3).   To the contrary, it is $40,000.00 to $400.000.00.

Thomas A. Dreyer, Esquire
30 Running Brook Road
Glen Mills, PA  19342
610-742-7883
Attorneys for James Crossan

Dated:   November 5, 2021