# THOMAS A. DREYER, ESQUIRE, PC

ATTORNEY AT LAW

Thomas A. Dreyer
President

30 RUNNING BROOK ROAD
GLEN MILLS, PENNSYLVANIA  19342
610-742-7883
Fax: 610-601-4518
E-mail: tdreyer610@aol.com

December 6, 2021

Honorable Leonard P. Stark
United States District Court
J. Caleb Boggs Federal Building
844 North King Street
Unit 26
Room 6124
Wilmington, DE  19801-3555

Re:   **United States v. James Crossan**
**Criminal Action No. 21-53 (LPS)**

Dear Judge Stark:

Sentencing in the referenced case is scheduled for December 21, 2021.

Enclosed find letters on behalf of Ms. Crossan from the following individuals:

1.   Felipe Almeida, her fiance
2.   Aaron El Sabrout, Esquire

In addition, enclosed find copies of the following documents:

1.   Her high school diploma
2.   Honor roll for the first marking period in 2011-2012 certificate
3.   Certificate of completion of a plumbing course at Delaware Technical
        Community College (80 hours)
4.   Certificate of completion of a hazardous materials awareness course
5.   Certificate of completion a hazardous materials first responder at the
        awareness level course

Honorable Leonard P. Stark
December 6, 2021
Page Two

6.  Certificate of completion of a basic firefighting skills course (36 hours)
7.  Certificate of completion of a structural firefighting skills course (24 hours)
8.  Nemours Report – 16 pages
9.  Trauma Focused Psychological Assessment from Nemours/Alfred E.
        duPont Hospital for Children – 5 pages
10. Delaware Division of Family Services' Motion to Suspend
            Visitation and Contact which includes an affidavit from
            Maisha J. Jones, a Master Family Service Specialist at
            the Delaware Division of Family Services – 8 pages

Thank you.

Respectfully yours,

*Thomas A. Dreyer*

Thomas A. Dreyer

cc.  James Crossan
     Carly A. Hudson, Esquire
     Butch L. Williams

Your Honor Judge Stark,

I am writing you to show my support and highlight all the positive factors of Ms. James Crossan's character and person, who I shall be referring to as "Jamie" on the course of this letter, being her preferred name due to her transgender condition.

Unfortunately due to my condition living in another continent and the current sanitary barriers on the United States Border Control I am not able to be physically present in person during sentencing, due to quarantine and logistical reasons. I hope I am able to express myself in the best way through this letter, as it will hardly replace my presence in person.

I, Felipe Almeida have known Jamie for 3 years, and ever since our initial contacts Jamie has been a caring and trustworthy friend at first, as our relation progressed until our eventual romantic relationship started in February 2020, despite being a foreigner with a complete different culture we have both created a strong bond of respect and love for each other, made even stronger considering the unusual traits of our relationship, as a foreigner and a transgender couple.

For the course of 2 years it's hard to remember any time me and Jamie spent more than a single day without talking to each other, and very often Jamie would display care, she has always valued her relatives and friends a lot, being someone that very often felt alone and displaced, I have initially met Jamie as she was going through her online persona as transgender, as she felt unsafe and closeted about her gender and sexuality, she was living a double life where she lived as James on her birth assigned gender and Jamie on an online persona, and as our talks and relation progressed Jamie opened herself to me about her conditions, insecure feelings and all the trauma she suffered and still suffers from her family issues, closeted sexuality and lifestyle.

Jamie might have met many different people through her online persona or in person, but I was the first person to have met both sides, she gave me the trust to become closer to her, Jamie has spent a lot of time on the internet talking to other transgender persons, or people that would show support as a manner of letting off her mental pressure from being repressed in life, in several occasions she often told me about her feelings of being born in the wrong body or thinking low of herself due to her own conditions and lack of support from family and friends, while I have come to know more about these questions, I know that I will never personally fully understand how she felt not being happy with her own image on the mirror.

Yet, despite all the problems she had on her childhood or her lack of confidence in herself, Jamie was always showing affection, care and company towards me through the course of those years, no matter how she was struggling with her own daily routine at the end of the day Jamie would always cheer me up and be there to talk, Jamie has shown enough trust to even while still being closeted about her gender and even our relationship at the start, that she gave me the opportunity to meet her family and friends, or talk about her family even when she still feared the prejudice from them, every other day she would always be making excuses to visit her grandparents after she moved out to make sure to look after them.

During our vacations in February 2020, which I have visited her in Delaware and Pennsylvania, she gave me the opportunity to meet her brother and spend the course of almost three weeks together sharing an apartment, she toured me and guided me around without asking for nothing in return, she was extremely interested in knowing more about my culture and Portuguese language, while showing herself as a very responsible person, Jamie wouldn't drive in the wrong way inside a parking lot, she never had a speeding ticket before and she scolded me when I was about to jaywalk in a street, something that is very common in my home town and was used to do.

I was also the first person Jamie declared she could be herself to openly, as she as never identified herself as a transgender women to anyone in person before, she was very happy and open about it in person, as this was a huge burden to her mental health before.

She was also very welcoming to me being a foreigner with different culture, she has never judged me over the place I was born, my culture or different language, she was actually very happy and interested to do a cultural exchange, she always wanted to help as much as she could, sometimes even hurting herself in the progress, in several occasions she dedicated her time and money to help or do things for friends, even when getting nothing in return, for those reasons and her willingness to help others she was a volunteer Firefighter and later enlisted in the Army National Guard, during the start of the COVID-19 outbreak while working at Amazon she did overtime work to help compensate for other workers that had adversities and had to stay home.

As her current partner and with all my intentions to consolidate our relationship in an official international marriage, I understand the factors that led Jamie to her situation and shall provide my full support for her, no matter the conditions, she shall always be welcome and have a place to live wherever I will be, and will always encourage her to seek further education, jobs, medical and mental assistance.

I find myself in a position where Jamie, my spouse is being sentenced for a case before our relationship started, and I forgive her, I don't believe Jamie deserves being marginalized and disproportionately criminalized, as she had her past investigated due to allegations that proven to be false made by a person that has antipathy towards her.

Jamie is a young transgender person who only last year started going through Hormone Replacement Therapy being held on a dangerous male prison, she has been intimidated over her gender identity by inmates and staff, and still has been seeking help from the Social Health Services, specially after "coming out" to her family after these events, hardly an ideal situation to do so, we were both very concerned not only about her safety but also the reactions of her relatives, some of which were supportive, some of which cut ties completely, specially during the COVID quarantines we spent over two months without getting any news, as she didn't had access to her list of phone numbers and addresses, only her grandparents would receive phone calls weekly, causing yet more anxiety and stress for all family members concerned over her safety and health, specially during a pre-trial hold where all the family was uneasy and waiting for any news from her.

Jamie is a person that needs help, not punishment, she is a young transgender woman with a historic of abuse, yet has an outstanding character and care for her friends and family, she has done volunteer work and military service showing her selflessness and dedication, she has been working on the same workplace for 5 years being an economical active and productive member of her community, against all the problems she faced on her upbringing and her gender identity.

I humbly hope Your Honor to consider all those mitigating facts about her background and current circumstances, and within possible to use your discretionary power to use the possibilities of alternative methods to prolonged incarceration for Jamie, as a much effective form of rehabilitation and reintegrating a vulnerable person like her into the community.


Thank you for your solidarity and understanding,

Sincerely,

FELIPE B. DE ALMEIDA, Spouse

10 / 18 / 2021
São Paulo, Brazil

Judge Leonard P. Stark
US District Court-Delaware
844 North King St
Wilmington, DE 19801-3570



**Letter in Support of Leniency for Ms. Jamie Crossan**

Dear Judge Stark,

I am writing to urge you to be merciful in sentencing Ms. Jamie Crossan, in light of strong mitigating factors in her favor. Ms. Crossan is a young, recently-out transgender woman who has experienced a history of abuse, violence, and family abandonment. While she has plead guilty to a federal sex offense, the fact remains that this case involves actions taken between two young people, both of whom were figuring out their gender and sexuality in the context of trauma and abuse. Youth who are figuring out their identities need space to grow, make mistakes, and be constructively corrected, not to be punished harshly and placed in circumstances that will lead to greater abuse and trauma.

Black & Pink National is a prison abolitionist organization devoted to abolishing the criminal punishment system and liberating LGBTQIA2S+ people and people living with HIV/AIDS who are affected by that system through advocacy, support, and organizing. Black & Pink National, founded in 2005, now has a strong grassroots network of 11 volunteer-led chapters and more than 20,000 currently and formerly incarcerated LGBTQIA2S+/HIV+ members located across the country. A significant number of our members are transgender people who were criminalized early in life, often before they had fully realized their transgender identities.[1] We strongly support leniency in Ms. Crossan's case, but are not based in Delaware or Pennsylvania and are not able to come to court in person.

---

[1] For more information about our members, please see "Coming Out of Concrete Closets: A Report on Black & Pink's National LGBTQ Prisoner Survey" (2015), available at http://www.blackandpink.org/wp-content/upLoads/Coming-Out-of-Concrete-Closets.-Black-and-Pink.-October-21-2015..pdf.

Through our work it has become clear to us that many women and LGBTQIA2S+ folks become criminalized due to their own marginalization, and due to traumatic experiences from their past.[2] Additionally, LGBTQIA2S+ individuals experience minority stress which affects their physical and mental health, and their propensity to engage in self-harming or risk-taking behavior.[3] Transgender people are a remarkably under-studied population, and much of the data on minority stress relates to gay men and other cisgender members of the LGBT community. However, analogous experiences contribute to minority stress among trans people, including experiences of prejudice and discrimination, expectations of discrimination, concealment of one's identity, and internalization of social stigma.[4]

Jamie's story intersects with these issues in many places. Jamie herself had a tumultuous childhood, and was removed from her birth family due to abuse at a young age before being resettled with her grandparents. Like many closeted transgender women, prior to coming out

[2] See, e.g., Justine van der Leun, "No Choice but to do it:' Why Women Go to Prison," *New Republic* (Jan. 2021) (75% of incarcerated women surveyed had experienced sexual violence, 30% were incarcerated due to self-defense); National Child Traumatic Stress Network, "Victimization and Juvenile Offending," https://www.nnctsn.org/sites/default/files/resources//victimization_juvenile_offending.pdf (90% of incarcerated young people had traumatic experiences prior to incarceration);

[3] See, e.g., Michael J Li, Sae Takeda, Chukwuemeka N. Okafor, Pamina M. Gorbach, Steven J. Shoptaw, and Steven W. Cole, "Experienced Homophobia and Gene Expression Alterations in Black & Latino Men Who Have Sex With Men In Los Angeles County," 83 Brain Behav. Immun. 120-125 (Jan. 2020) ("Experiences of homophobic victimization is associated with elevated levels of allostatic load, depression, anxiety, suicidality, and substance use disorders in [gay and bi men]"); Nicholas A. Livingston, Annessa Flentje, Nicholas C Heck, Allen Szalda-Petree, and Bryan N. Cochran, "Ecological Momentary Assessment of Daily Discrimination Experiences and Nicotine, Alcohol, and Drug Use Among Sexual and Gender Minority Individuals," 85:12 J. Consult. Clin. Psych. 1131-1143 (2017) (showing that experiences of discrimination lead directly to increased drug use and other risk behaviors); Garima Garg, Ghada Elshimi, and Raman Marwaha, *Gender Dysphoria* (showing that individuals with Gender Dysphoria have 28% rate of substance use disorders, 48.3% rate of suicidal ideation, 23.8% rate of suicide attempts, and 52% rate of personality disorders).

[4] Annessa Flentje, "AWARENESS: Development of a Cognitive Behavioral Intervention to Address Intersectional Minority Stress," 57:1 Psychotherapy 35-49 (Mar. 2020).

she served in the military,[5] perhaps as part of a last-ditch effort to present herself in a masculine way. Like many trans people, Jamie did not have the opportunity or resources to present herself the way she wanted to in society, and got caught up in criminal justice involvement.[6]

Jamie acknowledges and respects the seriousness of sexual abuse of youth, particularly because she herself experienced abuse as a child. She takes full responsibility for the conduct at issue in this case and will not do anything like that again. However, in this case the harm of incarceration far outweighs the seriousness of the underlying offense. Jamie is a young transgender woman, and keeping her in a federal men's prison is a vastly disproportionate punishment. According to the Department of Justice's own record keeping, 34.6% of incarcerated trans people report some form of sexual victimization while in prison. 24.1% of these instances are among incarcerated people, and 16.7% involve staff sexual misconduct.[7] However, other estimates range much higher.[8] As it is, Jamie herself has experienced repeated sexual harassment and threats against her safety during her 14 months of pretrial detention. Additionally, she has experienced multiple Prison Rape Elimination Act violations including staff discrimination and failure to provide her with private showers. Every moment that Jamie spends in prison is a risk to her safety and well being as a young woman housed among men with much more serious offenses.

[5] See Gary Gates & Jody Herman, "Transgender Military Service in the United States," UCLA Williams Institute (2014), available at https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Military-Service-US-May-2014.pdf (showing that transgender women have the highest rate of military service of any gender group, 32%, compared to the general rate (10.4%), cisgender men (19.7%), transgender men (5.5%), and cisgender women (1.7%)).

[6] See Coming Out of Concrete Closets, supra note 1 (indicating that 65% of trans incarcerated people were not able to be out or access medical care prior to incarceration).

[7] Bureau of Justice Statistics, "Prevalence of Sexual Victimization Among Transgender Adult Inmates," (2014) https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

[8] Coming out of Concrete Closets, supra note 1 (70% of respondents reported discrimination from staff, 77% from other prisoners; 35% reported staff physical assault, 64% reported prisoner physical assault; 37% reported unwanted staff sexual touching, 52% from other prisoners; 12% reported being raped by staff, 31% by other prisoners; and 15% reported promises by staff in exchange for sexual favors, which is also classified as staff sexual assault).

Jamie is a kind friend and a loving partner. Despite the stress and fear she has experienced being housed among male federal prisoners, she has worked throughout this year to explore and affirm her identity, seek mental and physical healthcare, and to make a life for herself beyond incarceration. What young trans people need to thrive is the support to take the steps that Jamie has finally been able to take in the last year. Jamie has a loving partner, Felipe Almeida, and supportive friends on the outside who can help her re-integrate as the woman she was born to be. She has also found organizational and community supports, like Black & Pink, that can help steer her toward the right path and prevent her from making mistakes like the one at issue here.

I strongly urge you to use your judicial discretion to go below the sentencing guidelines laid out in this case, and recommend a suspended sentence or a sentence involving no further incarceration for Ms. Crossan. Pursuant to 18 USC 3553, this court has the discretion to depart from sentencing guidelines where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Therefore, this court should take the opportunity to weigh the strong mitigating factors of childhood abuse and minority stress against the vastly disproportionate harm of placing a young woman among violent men for a term of incarceration. The balancing of these factors weighs heavily in favor of granting Jamie a short or suspended sentence, or releasing her to home confinement. Such sentence would help her on the path of development and rehabilitation, rather than conforming to a punitive ideal that should not be applied to cases like this.

Thank you for your consideration of this request.

Sincerely,

Aaron El Sabrout, esq.
he/him/his
Advocacy Manager
Black & Pink National

# William Penn High School

This is to certify that

## James D. Crossan

has completed in a satisfactory manner in the

## Colonial School District

the recommended course requirements of the State Board of Education for Secondary Schools and the local district program of studies and is awarded this

## Diploma

In Testimony Whereof, the seal of the State Board of Education and the signatures of the proper officers are hereunto affixed this

eighth day of June, two thousand and fifteen.

_Teri Quinn Gray_
President, State Board of Education

_Mary Murphy_
Secretary of Education

Registry No. 115268

District Superintendent

President, Board of Education

Principal

State of Delaware

# William Penn High School

## Congratulations to:

## *James D. Crossan*

### For earning

# HONOR ROLL

**1st Marking Period**
**2011-2012 School Year**





Communities
In Schools

Wilmington

frey D. Menzer
Principal

Susan M. Fols
Administrator of Schools Operations

Kevin A. White
Administrator of Academic Affairs

Erika A. Potts
Communities In Schools Site Direct

fory S. Gibeault
sistant Principal

Urahn Roberts
Assistant Principal

Christal L. Smith
Assistant Principal

James D. Zimmerman
Assistant Principal

# Delaware Technical Community College
## Workforce Development and Community Education
### Stanton/George Campus

hereby awards this certificate of completion of

## Plumbing

to

# James Crossan

Consisting of 80 hours of instruction - 8.0 CEUs
June 4, 2018 - September 12, 2018

_____
Program Ma[...]

_____
Assistant Vice Pres[...]
Workforce Development and Community Educ[...]

_____
Vice President and Campus Di[...]

DELAWARE
[TEC]HNICAL ◆ COMMUNITY
COLLEGE

# aware State Fire Prebention Commiss

# Delaware State Fire School

*as accredited by the*

**INTERNATIONAL FIRE SERVICE ACCREDITATION CONGRESS**

*hereby confirms that*

## James D. Crossan

*is certified as*

## Hazardous Materials Awareness

*in accordance with the provisions
of the National Fire Protection Association's
Professional Qualification Standards.*

10/12/2013

Certification Date

Robert P. Newnam
Director

# National Board on Fire Service Professional Qualifications

*It is hereby confirmed that*

## James D Crossan

*having been examined by an accredited agency in the*

*National Professional Qualifications System is certified as*

**Hazardous Materials First Responder at the Awareness Level**

*NFPA 472-2008*

*10/12/2013*



Secretary to the Board

Chairman of the Board

ificate # 331904          Certification issued by Delaware State Fire School

# Delaware State Fire School

## CERTIFICATE OF COMPLETION

### AWARDED TO

**James D Crossan**

**Port Penn Fire Company**

For the 36.0 HOUR

**Basic Firefighting Skills**

Conducted at Delaware State Fire School Kent on October 27, 2013

rs of Excellence

1964 - 2014

(36.5)
**TOTAL HOURS
OF TRAINING**

_____
Director

David J. Roberts
_____
Chairman, State Fire Prevention Commission

Emblems: (1)

# Delaware State Fire School

## CERTIFICATE OF COMPLETION

### AWARDED TO

**James D Crossan**

**Port Penn Fire Company**

For the 24.0 HOUR

## Structural Firefighting Skills

**Conducted at Delaware State Fire School Kent on March 23, 2014**



_____
Director

_David J. Roberts_
_____
Chairman, State Fire Prevention Commission

(60.5)
**TOTAL HOURS
OF TRAINING**

Emblems:

# Nemours

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## Visit Information

| | Provider | Location |
|---|---|---|
| 1/23/2006 9:30 AM | Colleen Sherman | Wilmington |

## Encounter Date/Type

1/23/06 - BEH Office Visit

## Allergies as of 1/23/2006                                                    Never Reviewed

Not on File

## Reason for Visit

**Abuse(suspected)**

## Diagnoses

| | Codes | Comments |
|---|---|---|
| **CHILD MALTREATMENT SYND** - Primary | 995.5 | |

## Encounter Messages

No messages in this encounter

## Progress Notes - All Notes

Author: —                     Service: —                          Author Type: —
Filed:                        Encounter Date: **1/23/2006**       Status: Signed
TRAUMA FOCUSED PSYCHOLOGICAL ASSESSMENT

REASON FOR REFERRAL:
James D. Crossan "Jimmy" was referred for a psychological evaluation by
the Delaware Child Advocacy Center (CAC), following an interview at the
CAC on 12/12/05, to determine his current developmental, emotional, and
behavioral functioning, as well as to assess additional risk factors,
prior to receiving mental health services. Jimmy and his siblings were
referred to the CAC due to concerns regarding possible sexual abuse of his
older sister, domestic violence, and physical abuse. Additionally,
Jimmy's older sister alleged that their mother and stepfather (James R.
Crossan) were selling drugs out of their home.

ASSESSMENT PROCEDURES:
Behavioral Observations
Clinical Interview with Grandfather
Interview with DFS worker
Interview with School Counselor
Review of Records
Child Sexual Behavior Inventory
Behavior Assessment Scale for Children - Second Edition-Parent report

RELEVANT BACKGROUND INFORMATION:
Jimmy and his grandfather (James A. Crossan) provided the following
background information. Additional information was obtained through
interviews with the older half siblings, Amber and Brandon Angell. Jimmy
currently lives with his sister Destiny (5-years-old), paternal
grandfather, paternal great-grandmother, and his grandfather's partner
(Gail). A 9-year-old cousin, Autumn, spends approximately every other
weekend with the family. Jimmy has three older half siblings, Raymond Jr.
(13-years-old), Amber (11-years-old), and Brandon (10-years-old) who are

# Nemours

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

---

## Progress Notes - All Notes (continued)

currently living with their biological father, Raymond Sr., his fiancé,
and their paternal grandfather.  Jimmy's early developmental and medical
history were unknown by James A. Crossan (grandfather).  No major
behavioral or emotional concerns were reported by James A. Crossan
(grandfather) since Jimmy has been living with him.  James A. Crossan
(grandfather) reported that Jimmy appears to have adjusted well to the
structure and routine at his house.

Jimmy's parents were married approximately 8 years ago, but have been
separated on and off during their marriage.  According to the report
provided by James A. Crossan, paternal grandfather, there were times when
Rebecca was living with other men and would see the children during the
day.  Additionally, due to domestic disputes, James R. Crossan (father),
was ordered to not have contact with Rebecca Smith at various times.
According to James A. Crossan (grandfather), James R. Crossan (father) is
currently in jail reportedly because the No Contact order was violated
when Rebecca and the children moved back into the house with him.  James
R. Crossan (father) is reportedly incarcerated for violating his parole.
James R. Crossen (father) has several arrests stemming from domestic
disputes with Ms. Smith.

Prior to the Division of Family Services taking custody of the children,
Jimmy lived with one or both of his biological parents, his sister
Destiny, and his half siblings (Raymond Jr., Brandon, and Amber).  In
early November of 2005, Jimmy and his siblings were removed from their
parents' custody and were placed with family members.  DFS became involved
due to allegations of physical abuse of Raymond Jr. by Rebecca Smith.
Currently, there is a No Contact order barring Ms. Smith from seeing her
children.

Jimmy is currently in the third grade at Darley Road Elementary School.
He has attended Darley Road since kindergarten.  Jimmy has an
Individualized Education Plan (IEP) due to writing difficulties.  He
receives assistance with writing approximately once per week.  Jimmy's
school counselor was interviewed by phone to provide information about his
behavioral, emotional, and academic functioning.  Ms. Shelly reported that
she began working with Jimmy in October of 2005.  In October, Jimmy
reportedly expressed concerns that he did not have anyone to help him with
his homework.  Ms. Shelly attempts to assist Jimmy with homework
approximately once per week.  Since Jimmy was placed with his grandfather,
Ms. Shelly and Jimmy's teacher, Ms. Washington, reported that Jimmy has
"completely turned around" and he is reportedly doing well academically
and behaviorally.  Ms. Washington and Ms. Shelly reported that Jimmy
appears more confident, is able to complete his work, appears to be in a
better mood, participates in class discussions, and has fewer outbursts.
Ms. Shelly also noted that Jimmy's appearance is neater since he was
placed with his grandfather.  James A. Crossan (grandfather) reported that
Jimmy initially would lie about having homework, but is now completing his
homework with additional assistance.

Review of Jimmy's medical chart reveals an emergency department visit on
March 28, 2002 due to concerns about possible child abuse.  At that time,
Jimmy reported that his mother (Rebecca Smith) kicked him in the butt with
her foot.  After the kick, Jimmy reportedly tripped and fell, hitting his

---

Nemours

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## Progress Notes - All Notes (continued)

abdomen on a table. Jimmy also disclosed that his mother and father
(James R. Crossan) hit him with an open hand and a belt on his buttocks.
Jimmy's physical examination revealed two small brownish bruises over the
lower spine area that could not be conclusively linked to abuse. However,
the Division of Family Services was notified and follow-up scheduled.
According to Sarah

An interview was conducted with Jimmy to elicit further information about
his exposure to domestic violence, physical abuse, and the molestation of
his older half-sister (Amber). Jimmy was initially very hesitant to
provide any information. He provided one or two word responses to
questions and indicated that everything was "fine" before with his mother
and father. Jimmy initially said that he always lived with both his
mother and father, but when further questioned, acknowledged that there
were times when his mother would stay over at a friend's house at night
and then come home in the morning. He indicated that he sometimes has bad
dreams about someone coming out of the television, which started after his
older brothers watched scary movies. Jimmy did not report other worries
or fears.

When Jimmy was asked directly about physical punishment at home, he
reported that his mother and father would send the children to their rooms
or ground them if they were bad. He noted that sometimes his parents
would "spank them on the butt with their clothes on". In this instance,
he provided more information than is typically provided by children his
age. He also stated that his mother would sometimes have to leave the
house when she was upset with the children's behavior. Jimmy denied any
abusive behaviors from a caretaker. Jimmy described an instance in which
Raymond Jr. was "accidentally" injured by James R. Crossan (his
step-father). Jimmy reported that one day when Raymond Jr. was being
punished, "Dad [James R. Crossan] grabbed him [Raymond Jr.] by the
shoulder, pushed him on the couch, but did not see that he put his head on
down on the side of the couch and hurt his head." Jimmy reported that
Raymond Jr. "put his head down on purpose to get hurt". Jimmy emphasized
that this incident was entirely Raymond Jr.'s fault.

When asked directly about any domestic disputes or violence, Jimmy
reported that his parents fought on exactly two occasions. He noted that
the first instance was when his father (James R. Crossan) was choking his
mother and Brandon (older brother) had to call 911. The second instance
was reportedly an argument between his mother and father that ended with
his mother screaming, "I'm through with you," and his father becoming
angry. No aggressive behavior was noted at this time. Jimmy continued to
persist in his statement that his parents only argued on the two
occasions. He emphatically denied any physical or sexual abuse. Jimmy
did not report any of the concerning behaviors that his older siblings
reported.

ASSESSMENT OF RISK FACTORS:
Family Abuse History:
There is reportedly a chronic history of domestic violence between Jimmy's
parents (Rebecca Smith and James R. Crossan). The police were called to
the home on several occasions due to domestic disputes and arrested James
R. Crossan on some of these occasions. Jimmy and his siblings were

**Nemours**

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## Progress Notes - All Notes (continued)

removed from Ms. Smith's custody after an incident in which Raymond Jr.
was injured.  Amber, Jimmy's older half-sister, has been sexually abused,
which resulted in the incarceration of the perpetrator, allegedly a fried
of Rebecca Smith and James R. Crossan.

Family Psychiatric History:
Per a conversation with DFS caseworker Maisha Jones, there is an extensive
maternal family history of drug abuse, legal problems, and allegations of
abuse and neglect.  Additionally, Raymond Jr. has been diagnosed with
Attention Deficit Hyperactivity Disorder (ADHD) and Oppositional Defiant
Disorder.

BEHAVIORAL OBSERVATIONS:
Jimmy was alert and oriented during the assessment.  He presented as a
pleasant, reserved 8-year-old boy.  He attended the assessment with his
sister Destiny and his grandfather and was met at the session by his older
half-sister, Amber.  Jimmy rarely made eye contact with the clinician.  He
was quiet and very polite.  Jimmy appeared quite anxious during the
individual interview.  He interacted appropriately with the clinicians,
but appeared to be on alert at all times.  Jimmy's affect was appropriate
for the situation.

RESULTS OF STANDARDIZED TESTING AND RATING SCALES:
Mr. Crossan completed the Child Sexual Behavior Inventory and the Behavior
Assessment System for Children.  Mr. Crossan did not endorse any of the
sexual behavior items.  On the behavior rating scale, Mr. Crossan reported
that all of Jimmy's behaviors fall within normal limits.

CLINICAL IMPRESSIONS AND RECOMMENDATIONS:
Jimmy presents as a reserved, somewhat anxious 8-year-old boy.  While he
reported only minimal exposure to domestic disputes and physical abuse, he
was very hesitant to provide information to the clinicians.  At other
times, Jimmy provided more information than it typically provided by
children, suggesting that he has either discussed this frequently or has
been coached on what to say.  When some of Jimmy's reports were
challenged, he was willing to change his story to be closer to what other
siblings have reported and is consistent with legal documents, but at
other times, he persisted with stories that were nearly impossible (e.g.,
parents only fought on two occasions when the police were called on
multiple occasions).

Behaviorally, emotionally, and academically, Jimmy appears to have made
significant gains since living in the stable environment of his paternal
grandfather.  At this time, no concerning behavioral or emotional symptoms
were reported.  However, given the level of anxiety during the interview,
it will be essential that he is monitored for future symptoms and is
encouraged to freely share information about his early experience without
threat of revenge.
It is extremely important for Jimmy and his siblings to continue to live
in an environment free of abusive behaviors.  In order for Jimmy to
continue to make behavioral and emotional progress, he needs continued
stability in a warm, supportive environment.  For Jimmy and his siblings,
it is essential that no type of corporal or physical punishment be
implemented, as these types of punishment will likely evoke memories of



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## Progress Notes - All Notes (continued)

prior abuse. Additionally, consequences for negative or disruptive
behaviors should be clearly defined and consistently implemented.

It is our understanding that the new DFS caseworker is Sarah McNew. Based
on a phone conversation with Ms. McNew, we agree with her recommendation
for supervised visitation for the parents. However, given the level of
anxiety and defensiveness that Jimmy demonstrated during the interview, it
is essential that a high level of supervision is provided by DFS workers
during these visits. Specifically, we recommend that DFS carefully
monitor the verbal interactions and terminate the visits if there are any
inappropriate interactions.

We enjoyed meeting with Jimmy and his grandfather. Should there be any
additional questions or need for information, please contact us at (302)
651-4512.

This evaluation was conducted by Meredith Dreyer, Ph.D., psychology
fellow, and Colleen Sherman, Ph.D.

### Encounter Status

Electronically signed by Colleen Sherman on 2/28/06 at 9:07 AM

## All Orders

### INTAC PSY DX INTERVIEW [6841936]

Electronically signed by: **Colleen Sherman on 01/25/06 0932**                           Status: **Completed**
Ordering user: Colleen Sherman 01/25/06 0932          Ordering provider: **Colleen Sherman**

### All Results

No results found

### Follow-up and Dispositions



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

---

**Encounter-Level Documents - 01/23/2006:**

Scan on 3/2/2006  9:04 AM: Trauma Focused Psychological Assessment (below)

Nemours
Alfred I. duPont
Hospital for Children
Nemours
Children's Clinic

PATIENT:   Crossan, James D.
DOB:       7/19/1997
MR#:       10244386
DATE of Evaluation:  1/23/2006

RECEIVED
MAR 0 1 2006

## TRAUMA FOCUSED PSYCHOLOGICAL ASSESSMENT

### REASON FOR REFERRAL:
James D. Crossan "Jimmy" was referred for a psychological evaluation by the Delaware Child Advocacy Center (CAC), following an interview at the CAC on 12/12/05, to determine his current developmental, emotional, and behavioral functioning, as well as to assess additional risk factors, prior to receiving mental health services. Jimmy and his siblings were referred to the CAC due to concerns regarding possible sexual abuse of his older sister, domestic violence, and physical abuse. Additionally, Jimmy's older sister alleged that their mother and stepfather (James R. Crossan) were selling drugs out of their home.

### ASSESSMENT PROCEDURES:
Behavioral Observations
Clinical Interview with Grandfather
Interview with DFS worker
Interview with School Counselor
Review of Records
Child Sexual Behavior Inventory
Behavior Assessment Scale for Children – Second Edition-Parent report

### RELEVANT BACKGROUND INFORMATION:
Jimmy and his grandfather (James A. Crossan) provided the following background information. Additional information was obtained through interviews with the older half siblings, Amber and Brandon Angell. Jimmy currently lives with his sister Destiny (5-years-old), paternal grandfather, paternal great-grandmother, and his grandfather's partner (Gail). A 9-year-old cousin, Autumn, spends approximately every other weekend with the family. Jimmy has three older half siblings, Raymond Jr. (13-years-old), Amber (11-years-old), and Brandon (10-years-old) who are currently living with their biological father, Raymond Sr., his fiancé, and their paternal grandfather. Jimmy's early developmental and medical history were unknown by James A. Crossan (grandfather). No major behavioral or emotional concerns were reported by James A. Crossan (grandfather) since Jimmy has been living with him. James A. Crossan (grandfather) reported that Jimmy appears to have adjusted well to the structure and routine at his house.

Jimmy's parents were married approximately 8 years ago, but have been separated on and off during their marriage. According to the report provided by James A. Crossan, paternal grandfather, there were times when Rebecca was living with other men and would see the children during the day. Additionally, due to domestic disputes, James R. Crossan (father), was ordered to not have contact with Rebecca Smith at various times. According to James

Page 1 of 6



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

---

**Encounter-Level Documents - 01/23/2006: (continued)**

Nemours

Alfred I. duPont
Hospital for Children

Nemours
Children's Clinic

| | |
|---|---|
| **PATIENT:** | Crossan, James D. |
| **DOB:** | 7/19/1997 |
| **MR#:** | 10244386 |
| **DATE of Evaluation:** | 1/23/2006 |

A. Crossan (grandfather), James R. Crossan (father) is currently in jail reportedly because the No Contact order was violated when Rebecca and the children moved back into the house with him. James R. Crossan (father) is reportedly incarcerated for violating his parole. James R. Crossan (father) has several arrests stemming from domestic disputes with Ms. Smith.

Prior to the Division of Family Services taking custody of the children, Jimmy lived with one or both of his biological parents, his sister Destiny, and his half siblings (Raymond Jr., Brandon, and Amber). In early November of 2005, Jimmy and his siblings were removed from their parents' custody and were placed with family members. DFS became involved due to allegations of physical abuse of Raymond Jr. by Rebecca Smith. Currently, there is a No Contact order barring Ms. Smith from seeing her children.

Jimmy is currently in the third grade at Darley Road Elementary School. He has attended Darley Road since kindergarten. Jimmy has an Individualized Education Plan (IEP) due to writing difficulties. He receives assistance with writing approximately once per week. Jimmy's school counselor was interviewed by phone to provide information about his behavioral, emotional, and academic functioning. Ms. Shelly reported that she began working with Jimmy in October of 2005. In October, Jimmy reportedly expressed concerns that he did not have anyone to help him with his homework. Ms. Shelly attempts to assist Jimmy with homework approximately once per week. Since Jimmy was placed with his grandfather, Ms. Shelly and Jimmy's teacher, Ms. Washington, reported that Jimmy has "completely turned around" and he is reportedly doing well academically and behaviorally. Ms. Washington and Ms. Shelly reported that Jimmy appears more confident, is able to complete his work, appears to be in a better mood, participates in class discussions, and has fewer outbursts. Ms. Shelly also noted that Jimmy's appearance is neater since he was placed with his grandfather. James A. Crossan (grandfather) reported that Jimmy initially would lie about having homework, but is now completing his homework with additional assistance.

Review of Jimmy's medical chart reveals an emergency department visit on March 28, 2002 due to concerns about possible child abuse. At that time, Jimmy reported that his mother (Rebecca Smith) kicked him in the butt with her foot. After the kick, Jimmy reportedly tripped and fell, hitting his abdomen on a table. Jimmy also disclosed that his mother and father (James R. Crossan) hit him with an open hand and a belt on his buttocks. Jimmy's physical examination revealed two small brownish bruises over the lower spine area that could not be conclusively linked to abuse. However, the Division of Family Services was notified and follow-up scheduled. According to Sarah

Page 2 of 6



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## Encounter-Level Documents - 01/23/2006: (continued)

| Nemours — Alfred I. duPont Hospital for Children / Nemours Children's Clinic | PATIENT: | Crossan, James D. |
|---|---|---|
| | DOB: | 7/19/1997 |
| | MR#: | 10244386 |
| | DATE of Evaluation: | 1/23/2006 |

An interview was conducted with Jimmy to elicit further information about his exposure to domestic violence, physical abuse, and the molestation of his older half-sister (Amber). Jimmy was initially very hesitant to provide any information. He provided one or two word responses to questions and indicated that everything was "fine" before with his mother and father. Jimmy initially said that he always lived with both his mother and father, but when further questioned, acknowledged that there were times when his mother would stay over at a friend's house at night and then come home in the morning. He indicated that he sometimes has bad dreams about someone coming out of the television, which started after his older brothers watched scary movies. Jimmy did not report other worries or fears.

When Jimmy was asked directly about physical punishment at home, he reported that his mother and father would send the children to their rooms or ground them if they were bad. He noted that sometimes his parents would "spank them on the butt with their clothes on". In this instance, he provided more information than is typically provided by children his age. He also stated that his mother would sometimes have to leave the house when she was upset with the children's behavior. Jimmy denied any abusive behaviors from a caretaker. Jimmy described an instance in which Raymond Jr. was "accidentally" injured by James R. Crossan (his step-father). Jimmy reported that one day when Raymond Jr. was being punished, "Dad [James R. Crossan] grabbed him [Raymond Jr.] by the shoulder, pushed him on the couch, but did not see that he put his head on down on the side of the couch and hurt his head." Jimmy reported that Raymond Jr. "put his head down on purpose to get hurt". Jimmy emphasized that this incident was entirely Raymond Jr.'s fault.

When asked directly about any domestic disputes or violence, Jimmy reported that his parents fought on exactly two occasions. He noted that the first instance was when his father (James R. Crossan) was choking his mother and Brandon (older brother) had to call 911. The second instance was reportedly an argument between his mother and father that ended with his mother screaming, "I'm through with you," and his father becoming angry. No aggressive behavior was noted at this time. Jimmy continued to persist in his statement that his parents only argued on the two occasions. He emphatically denied any physical or sexual abuse. Jimmy did not report any of the concerning behaviors that his older siblings reported.

### ASSESSMENT OF RISK FACTORS:
Family Abuse History:
There is reportedly a chronic history of domestic violence between Jimmy's parents (Rebecca Smith and James R. Crossan). The police were called to the home on several occasions due to domestic disputes and arrested James R. Crossan on some of these

Page 3 of 6



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

**Encounter-Level Documents - 01/23/2006: (continued)**

Nemours
Alfred I. duPont
Hospital for Children
Nemours
Children's Clinic

| | |
|---|---|
| PATIENT: | Crossan, James D. |
| DOB: | 7/19/1997 |
| MR#: | 10244386 |
| DATE of Evaluation: | 1/23/2006 |

occasions. Jimmy and his siblings were removed from Ms. Smith's custody after an incident in which Raymond Jr. was injured. Amber, Jimmy's older half-sister, has been sexually abused, which resulted in the incarceration of the perpetrator, allegedly a fried of Rebecca Smith and James R. Crossan.

Family Psychiatric History:
Per a conversation with DFS caseworker Maisha Jones, there is an extensive maternal family history of drug abuse, legal problems, and allegations of abuse and neglect. Additionally, Raymond Jr. has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and Oppositional Defiant Disorder.

**BEHAVIORAL OBSERVATIONS:**
Jimmy was alert and oriented during the assessment. He presented as a pleasant, reserved 8-year-old boy. He attended the assessment with his sister Destiny and his grandfather and was met at the session by his older half-sister, Amber. Jimmy rarely made eye contact with the clinician. He was quiet and very polite. Jimmy appeared quite anxious during the individual interview. He interacted appropriately with the clinicians, but appeared to be on alert at all times. Jimmy's affect was appropriate for the situation.

**RESULTS OF STANDARDIZED TESTING AND RATING SCALES:**
Mr. Crossan completed the Child Sexual Behavior Inventory and the Behavior Assessment System for Children. Mr. Crossan did not endorse any of the sexual behavior items. On the behavior rating scale, Mr. Crossan reported that all of Jimmy's behaviors fall within normal limits.

**CLINICAL IMPRESSIONS AND RECOMMENDATIONS:**
Jimmy presents as a reserved, somewhat anxious 8-year-old boy. While he reported only minimal exposure to domestic disputes and physical abuse, he was very hesitant to provide information to the clinicians. At other times, Jimmy provided more information than it typically provided by children, suggesting that he has either discussed this frequently or has been coached on what to say. When some of Jimmy's reports were challenged, he was willing to change his story to be closer to what other siblings have reported and is consistent with legal documents, but at other times, he persisted with stories that were nearly impossible (e.g., parents only fought on two occasions when the police were called on multiple occasions).

Behaviorally, emotionally, and academically, Jimmy appears to have made significant gains since living in the stable environment of his paternal grandfather. At this time, no concerning behavioral or emotional symptoms were reported. However, given the level of anxiety during the interview, it will be essential that he is monitored for future

Page 4 of 6



Nemours | Alfred I. duPont Hospital for Children | Nemours Children's Clinic

**PATIENT:** Crossan, James D.
**DOB:** 7/19/1997
**MR#:** 10244386
**DATE of Evaluation:** 1/23/2006

symptoms and is encouraged to freely share information about his early experience without threat of revenge.
It is extremely important for Jimmy and his siblings to continue to live in an environment free of abusive behaviors. In order for Jimmy to continue to make behavioral and emotional progress, he needs continued stability in a warm, supportive environment. For Jimmy and his siblings, it is essential that no type of corporal or physical punishment be implemented, as these types of punishment will likely evoke memories of prior abuse. Additionally, consequences for negative or disruptive behaviors should be clearly defined and consistently implemented.

It is our understanding that the new DFS caseworker is Sarah McNew. Based on a phone conversation with Ms. McNew, we agree with her recommendation for supervised visitation for the parents. However, given the level of anxiety and defensiveness that Jimmy demonstrated during the interview, it is essential that a high level of supervision is provided by DFS workers during these visits. Specifically, we recommend that DFS carefully monitor the verbal interactions and terminate the visits if there are any inappropriate interactions.

We enjoyed meeting with Jimmy and his grandfather. Should there be any additional questions or need for information, please contact us at (302) 651-4512.

Meredith L. Dreyer, Ph.D.
Meredith Dreyer, Ph.D.
Post-doctoral Fellow
Division of Behavioral Health

Colleen Sherman, PhD
Colleen Sherman, Ph.D.
Pediatric Psychologist
Division of Behavioral Health

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## Encounter-Level Documents - 01/23/2006: (continued)

Nemours
Alfred I. duPont
Hospital for Children

Nemours
Children's Clinic

| PATIENT: | Crossan, James D. |
|---|---|
| DOB: | 7/19/1997 |
| MR#: | 10244386 |
| DATE of Evaluation: | 1/23/2006 |

### Behavior Assessment System for Children – Second Edition (BASC-2)

| CLINICAL SCALES | Grandfather T-Score | | Descriptive Range |
|---|---|---|---|
| Hyperactivity | 44 | | Average |
| Aggression | 47 | | Average |
| Conduct Problems | 56 | | Average |
| Anxiety | 41 | | Average |
| Depression | 39 | | Average |
| Somatization | 37 | | Average |
| Atypicality | 41 | | Average |
| Withdrawal | 47 | | Average |
| Attention Problems | 49 | | Average |
| **ADAPTIVE SCALES** | | | |
| Adaptability | 51 | | Average |
| Social Skills | 48 | | Average |
| Leadership | 47 | | Average |
| Activities of Daily Living | 51 | | Average |
| Functional Communication | 38 | * | At-Risk |
| **COMPOSITES** | | | |
| Externalizing Problems | 49 | | Average |
| Internalizing Problems | 36 | | Average |
| Behavioral Symptom Index | 43 | | Average |
| Adaptive Skills | 46 | | Average |

\* denotes borderline significant score
\*\* denotes clinically significant score

For Clinical Scales, higher scores suggest areas of concern, while on Adaptive Scales, lower numbers suggest areas of concern.

Page 6 of 6

**Nemours**

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

**Order-Level Documents:**

There are no order-level documents.

**Encounter-Level E-Signatures:**

No documentation.

Scan on 10/6/2020  2:20 PM by Ecfservice User: DELAWARE FEDERAL PUBLIC DEFENDER (below)



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006



OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

EDSON A. BOSTIC
FEDERAL PUBLIC DEFENDER

**Via Email & Mail: patientrecords@nemours.org**

October 1, 2020

**Attn: Custodian of Records**                                          OCT 06 2020
Nemours/Alfred I. duPont
Hospital for Children                                                   RECEIVED
Health Information Management
1600 Rockland Road
Wilmington, Delaware 19803

Re: Re: *United States v James Crossan*, 20-122-UNA

Dear Sir/Madam:

The Office of the Federal Public Defender represents James Crossan in a matter currently
pending in the United States District Court for the District of Delaware.  In association with that
matter, we request the following materials:

Any and all medical, mental health, and substance abuse treatment records regarding **James
Crossan, DOB: 07/19/1997, SSN: 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** from 1997 to the present. I have enclosed a
general authorization for release of information, and HIPAA compliant releases for your file.

As our office is court appointed to represent indigent individuals, please consider waiving
production fees. If this is not possible, please contact me at **krista_smith@fd.org** or 302-803-
2966. **These records are necessary for a pending legal matter, and this request is urgent in
nature.** You may email me the records at the email address I provided above. I apologize for any
inconvenience this may cause. Thank you for your time and assistance.

Sincerely,

*/s/ Krista Smith*

Krista Smith
Investigator/Paralegal

Enclosures



## HIPAA COMPLIANT AUTHORIZATION FOR RELEASE OF INFORMATION

I, James Crossan, DOB: 07/19/1997, by this release or a photocopy or facsimile transmission thereof, authorize and request all covered health care providers to release to the Delaware Federal Public Defender (FPD), or any representative thereof, any and all notes in your possession or to which you have access that relate in any way to mental health, psychological and/or psychiatric treatment of provided to me by you or any other entity.

I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment or payment or my eligibility for benefits. I may inspect or copy any information used/disclosed under this authorization to the extent allowed by law.

I expressly authorize and request you to disclose and discuss with FPD or its representative any information including, but not limited to, such otherwise confidential information received from, provided to and/or exchanged with any and all past or present doctors, experts, lawyers, law enforcement officers, witnesses, prosecutors, judges, probation officers, correctional officers, counselors, or any other individuals.

This authorization is for the purpose of use in habeas and clemency proceedings and will expire upon the completion of those proceedings. However, I know that I can revoke this authorization by writing to the FPD or any representative thereof my desire to revoke it. I understand that I have a right to a copy of this authorization. I understand that the FPD or a representative thereof may re-disclose the information to individuals or organizations not subject to HIPAA. I hereby release you (in your individual and professional capacity) from any and all liability arising from the disclosure of otherwise confidential information.

You are specifically authorized to photocopy records and to release and/or send copies to FPD or its representative.

Signature: [signature] Date: 6/30/2020

Witness: [signature]

**Send Records to:**
**Delaware Federal Public Defender**
**800 King Street, Suite 200**
**Wilmington, DE 19801**
**(302) 573 6010**

OCT 0 4 2020
RECEIVED

Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## HIPAA COMPLIANT AUTHORIZATION FOR RELEASE
## OF INFORMATION

I, James Crossan                      , DOB: 07/19/1997         , by this release or a
photocopy or facsimile transmission thereof, authorize and request all covered health care providers to
release to the Delaware Federal Public Defender (FPD), or any representative thereof, any and all
information and/or records in your possession or to which you have access, in any form or medium,
including but not limited to reports, forms, files, radiographs, EEG/EKG printouts, MRI/PET/SPECT or
any other images or printouts, computer files and printouts, notes, memoranda, discharge summaries,
medication records, nurses notes, physicians' orders, referrals, surgical and operating room records,
emergency room records, correspondence and all other documents relating in any way to my psychiatric,
psychological, and medical history and/or treatment, including those relating to communicable diseases,
HIV/AIDS status and substance abuse and dependence, by you and any other entity.

I understand that I may refuse to sign this authorization and that my refusal to sign will not affect
my ability to obtain treatment or payment or my eligibility for benefits. I may inspect or copy any
information used/disclosed under this authorization to the extent allowed by law.

I expressly authorize and request you to disclose and discuss with FPD or its representative any
information including, but not limited to, otherwise confidential information received from, provided to
and/or exchanged with any and all past or present doctors, mental health professionals, experts, lawyers,
law enforcement officers, witnesses, prosecutors, judges, probation officers, correctional officers,
counselors or any other individuals.

This authorization is for the purpose of use in criminal proceedings and will expire upon the
completion of those proceedings. However, I know that I can revoke this authorization by writing to the
FPD or any representative thereof my desire to revoke it. I understand that I have a right to a copy of this
authorization. I understand that the FPD or a representative thereof may re-disclose the information to
individuals or organizations not subject to HIPAA. I hereby release you (in your individual and
professional capacity) from any and all liability arising from the disclosure of otherwise confidential
information.

You are specifically authorized to photocopy records and to release and/or send copies to the FPD
or its representative.

Signature: _____   Date: 6/30/2020

Witness: _____

Send Records to:
Delaware Federal Public Defender
800 King Street, Suite 200
Wilmington, DE 19801
(302) 573 6010

OCT 08 2020
RECEIVED



Ambulatory Report

Crossan, James D
MRN: 10244386, DOB: 7/19/1997, Sex: M
Visit date: 1/23/2006

## AUTHORIZATION FOR RELEASE OF
## INFORMATION AND RECORDS

I, _James Crossan_____, DOB: _07/19/1997_____, by this release or a photocopy or facsimile transmission thereof, authorize and request you to release to the Delaware Federal Public Defender ("FPD"), or its representative, any and all information and/or records relating to me, including (but not limited to) vital (including birth, marriage and divorce records), education, adoption, social services, welfare, child protective services, correctional (including all prison and jail records), employment (including worker's compensation and unemployment), social security (including earnings information), juvenile, family court, law enforcement (including arrest and incident reports), financial (including banking, tax and savings and loan records), military, probation, and rehabilitation (including alcohol and drug rehabilitation) records, as well as any and all files, reports, memoranda and notes prepared, received and/or maintained in connection with prior or pending civil, family, juvenile or criminal litigation, and any other correspondence or documents.

This document expressly allows and authorizes you to disclose and discuss with the FPD or its representative any information including, but not limited to, otherwise confidential information received from, provided to and/or exchanged with any and all past or present doctors, mental health professionals, experts, lawyers, law enforcement officers, witnesses, prosecutors, judges, probation officers, correctional officers, counselors or any other individuals, pertaining to all matters including, but not limited to the subject, substance and outcome of any communications pertaining to the preparation, litigation, negotiation, settlement and/or disposition of any and all litigation in which I was a party, witness or potential witness. In consideration of such disclosure, I hereby release you (in your individual and professional capacity) from any and all liability arising from the disclosure of otherwise confidential information.

You are specifically authorized to photocopy records and to release copies to the FPD or its representative.

Signature: _____          Date: _6/30/2020_____

Witness: _____

Send Records to:
Delaware Federal Public Defender
800 King Street, Suite 200
Wilmington, DE 19801
(302) 573 6010

OCT 0 6 2020
RECEIVED

## END OF REPORT



**Nemours** | Alfred I. duPont
Hospital for Children
Nemours
Children's Clinic

**PATIENT:** Crossan, James D.
**DOB:** 7/19/1997
**MR#:** 10244386
**DATE of Evaluation:** 1/23/2006

## TRAUMA FOCUSED PSYCHOLOGICAL ASSESSMENT

**REASON FOR REFERRAL:**
James D. Crossan "Jimmy" was referred for a psychological evaluation by the Delaware
Child Advocacy Center (CAC), following an interview at the CAC on 12/12/05, to
determine his current developmental, emotional, and behavioral functioning, as well as to
assess additional risk factors, prior to receiving mental health services. Jimmy and his
siblings were referred to the CAC due to concerns regarding possible sexual abuse of his
older sister, domestic violence, and physical abuse. Additionally, Jimmy's older sister
alleged that their mother and stepfather (James R. Crossan) were selling drugs out of their
home.

**ASSESSMENT PROCEDURES:**
Behavioral Observations
Clinical Interview with Grandfather
Interview with DFS worker
Interview with School Counselor
Review of Records
Child Sexual Behavior Inventory
Behavior Assessment Scale for Children – Second Edition-Parent report

**RELEVANT BACKGROUND INFORMATION:**
Jimmy and his grandfather (James A. Crossan) provided the following background
information. Additional information was obtained through interviews with the older half
siblings, Amber and Brandon Angell. Jimmy currently lives with his sister Destiny (5-
years-old), paternal grandfather, paternal great-grandmother, and his grandfather's partner
(Gail). A 9-year-old cousin, Autumn, spends approximately every other weekend with the
family. Jimmy has three older half siblings, Raymond Jr. (13-years-old), Amber (11-years-
old), and Brandon (10-years-old) who are currently living with their biological father,
Raymond Sr., his fiancé, and their paternal grandfather. Jimmy's early developmental and
medical history were unknown by James A. Crossan (grandfather). No major behavioral or
emotional concerns were reported by James A. Crossan (grandfather) since Jimmy has been
living with him. James A. Crossan (grandfather) reported that Jimmy appears to have
adjusted well to the structure and routine at his house.

Jimmy's parents were married approximately 8 years ago, but have been separated on and
off during their marriage. According to the report provided by James A. Crossan, paternal
grandfather, there were times when Rebecca was living with other men and would see the
children during the day. Additionally, due to domestic disputes, James R. Crossan (father),
was ordered to not have contact with Rebecca Smith at various times. According to James



| | | **PATIENT**: | Crossan, James D. |
| --- | --- | --- | --- |
| | | **DOB**: | 7/19/1997 |
| | | **MR#**: | 10244386 |
| | | **DATE of Evaluation**: | 1/23/2006 |

Nemours — Alfred I. duPont Hospital for Children / Nemours Children's Clinic

A. Crossan (grandfather), James R. Crossan (father) is currently in jail reportedly because the No Contact order was violated when Rebecca and the children moved back into the house with him. James R. Crossan (father) is reportedly incarcerated for violating his parole. James R. Crossen (father) has several arrests stemming from domestic disputes with Ms. Smith.

Prior to the Division of Family Services taking custody of the children, Jimmy lived with one or both of his biological parents, his sister Destiny, and his half siblings (Raymond Jr., Brandon, and Amber). In early November of 2005, Jimmy and his siblings were removed from their parents' custody and were placed with family members. DFS became involved due to allegations of physical abuse of Raymond Jr. by Rebecca Smith. Currently, there is a No Contact order barring Ms. Smith from seeing her children.

Jimmy is currently in the third grade at Darley Road Elementary School. He has attended Darley Road since kindergarten. Jimmy has an Individualized Education Plan (IEP) due to writing difficulties. He receives assistance with writing approximately once per week. Jimmy's school counselor was interviewed by phone to provide information about his behavioral, emotional, and academic functioning. Ms. Shelly reported that she began working with Jimmy in October of 2005. In October, Jimmy reportedly expressed concerns that he did not have anyone to help him with his homework. Ms. Shelly attempts to assist Jimmy with homework approximately once per week. Since Jimmy was placed with his grandfather, Ms. Shelly and Jimmy's teacher, Ms. Washington, reported that Jimmy has "completely turned around" and he is reportedly doing well academically and behaviorally. Ms. Washington and Ms. Shelly reported that Jimmy appears more confident, is able to complete his work, appears to be in a better mood, participates in class discussions, and has fewer outbursts. Ms. Shelly also noted that Jimmy's appearance is neater since he was placed with his grandfather. James A. Crossan (grandfather) reported that Jimmy initially would lie about having homework, but is now completing his homework with additional assistance.

Review of Jimmy's medical chart reveals an emergency department visit on March 28, 2002 due to concerns about possible child abuse. At that time, Jimmy reported that his mother (Rebecca Smith) kicked him in the butt with her foot. After the kick, Jimmy reportedly tripped and fell, hitting his abdomen on a table. Jimmy also disclosed that his mother and father (James R. Crossan) hit him with an open hand and a belt on his buttocks. Jimmy's physical examination revealed two small brownish bruises over the lower spine area that could not be conclusively linked to abuse. However, the Division of Family Services was notified and follow-up scheduled. According to Sarah

| Nemours | Alfred I. duPont Hospital for Children Nemours Children's Clinic | **PATIENT:** | Crossan, James D. |
| | | **DOB:** | 7/19/1997 |
| | | **MR#:** | 10244386 |
| | | **DATE of Evaluation:** | 1/23/2006 |

An interview was conducted with Jimmy to elicit further information about his exposure to domestic violence, physical abuse, and the molestation of his older half-sister (Amber). Jimmy was initially very hesitant to provide any information. He provided one or two word responses to questions and indicated that everything was "fine" before with his mother and father. Jimmy initially said that he always lived with both his mother and father, but when further questioned, acknowledged that there were times when his mother would stay over at a friend's house at night and then come home in the morning. He indicated that he sometimes has bad dreams about someone coming out of the television, which started after his older brothers watched scary movies. Jimmy did not report other worries or fears.

When Jimmy was asked directly about physical punishment at home, he reported that his mother and father would send the children to their rooms or ground them if they were bad. He noted that sometimes his parents would "spank them on the butt with their clothes on". In this instance, he provided more information than is typically provided by children his age. He also stated that his mother would sometimes have to leave the house when she was upset with the children's behavior. Jimmy denied any abusive behaviors from a caretaker. Jimmy described an instance in which Raymond Jr. was "accidentally" injured by James R. Crossan (his step-father). Jimmy reported that one day when Raymond Jr. was being punished, "Dad [James R. Crossan] grabbed him [Raymond Jr.] by the shoulder, pushed him on the couch, but did not see that he put his head on down on the side of the couch and hurt his head." Jimmy reported that Raymond Jr. "put his head down on purpose to get hurt". Jimmy emphasized that this incident was entirely Raymond Jr.'s fault.

When asked directly about any domestic disputes or violence, Jimmy reported that his parents fought on exactly two occasions. He noted that the first instance was when his father (James R. Crossan) was choking his mother and Brandon (older brother) had to call 911. The second instance was reportedly an argument between his mother and father that ended with his mother screaming, "I'm through with you," and his father becoming angry. No aggressive behavior was noted at this time. Jimmy continued to persist in his statement that his parents only argued on the two occasions. He emphatically denied any physical or sexual abuse. Jimmy did not report any of the concerning behaviors that his older siblings reported.

## ASSESSMENT OF RISK FACTORS:
Family Abuse History:
There is reportedly a chronic history of domestic violence between Jimmy's parents (Rebecca Smith and James R. Crossan). The police were called to the home on several occasions due to domestic disputes and arrested James R. Crossan on some of these



| | | PATIENT: | Crossan, James D. |
|---|---|---|---|
| Nemours | Alfred I. duPont Hospital for Children | DOB: | 7/19/1997 |
| | Nemours Children's Clinic | MR#: | 10244386 |
| | | DATE of Evaluation: | 1/23/2006 |

occasions. Jimmy and his siblings were removed from Ms. Smith's custody after an incident in which Raymond Jr. was injured. Amber, Jimmy's older half-sister, has been sexually abused, which resulted in the incarceration of the perpetrator, allegedly a fried of Rebecca Smith and James R. Crossan.

Family Psychiatric History:
Per a conversation with DFS caseworker Maisha Jones, there is an extensive maternal family history of drug abuse, legal problems, and allegations of abuse and neglect. Additionally, Raymond Jr. has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and Oppositional Defiant Disorder.

**BEHAVIORAL OBSERVATIONS:**
Jimmy was alert and oriented during the assessment. He presented as a pleasant, reserved 8-year-old boy. He attended the assessment with his sister Destiny and his grandfather and was met at the session by his older half-sister, Amber. Jimmy rarely made eye contact with the clinician. He was quiet and very polite. Jimmy appeared quite anxious during the individual interview. He interacted appropriately with the clinicians, but appeared to be on alert at all times. Jimmy's affect was appropriate for the situation.

**RESULTS OF STANDARDIZED TESTING AND RATING SCALES:**
Mr. Crossan completed the Child Sexual Behavior Inventory and the Behavior Assessment System for Children. Mr. Crossan did not endorse any of the sexual behavior items. On the behavior rating scale, Mr. Crossan reported that all of Jimmy's behaviors fall within normal limits.

**CLINICAL IMPRESSIONS AND RECOMMENDATIONS:**
Jimmy presents as a reserved, somewhat anxious 8-year-old boy. While he reported only minimal exposure to domestic disputes and physical abuse, he was very hesitant to provide information to the clinicians. At other times, Jimmy provided more information than it typically provided by children, suggesting that he has either discussed this frequently or has been coached on what to say. When some of Jimmy's reports were challenged, he was willing to change his story to be closer to what other siblings have reported and is consistent with legal documents, but at other times, he persisted with stories that were nearly impossible (e.g., parents only fought on two occasions when the police were called on multiple occasions).

Behaviorally, emotionally, and academically, Jimmy appears to have made significant gains since living in the stable environment of his paternal grandfather. At this time, no concerning behavioral or emotional symptoms were reported. However, given the level of anxiety during the interview, it will be essential that he is monitored for future



| | | PATIENT: | Crossan, James D. |
|---|---|---|---|
| | | DOB: | 7/19/1997 |
| | | MR#: | 10244386 |
| | | DATE of Evaluation: | 1/23/2006 |

symptoms and is encouraged to freely share information about his early experience without threat of revenge.

It is extremely important for Jimmy and his siblings to continue to live in an environment free of abusive behaviors. In order for Jimmy to continue to make behavioral and emotional progress, he needs continued stability in a warm, supportive environment. For Jimmy and his siblings, it is essential that no type of corporal or physical punishment be implemented, as these types of punishment will likely evoke memories of prior abuse. Additionally, consequences for negative or disruptive behaviors should be clearly defined and consistently implemented.

It is our understanding that the new DFS caseworker is Sarah McNew. Based on a phone conversation with Ms. McNew, we agree with her recommendation for supervised visitation for the parents. However, given the level of anxiety and defensiveness that Jimmy demonstrated during the interview, it is essential that a high level of supervision is provided by DFS workers during these visits. Specifically, we recommend that DFS carefully monitor the verbal interactions and terminate the visits if there are any inappropriate interactions.

We enjoyed meeting with Jimmy and his grandfather. Should there be any additional questions or need for information, please contact us at (302) 651-4512.

Meredith Dreyer, Ph.D.
Post-doctoral Fellow
Division of Behavioral Health

Colleen Sherman, Ph.D.
Pediatric Psychologist
Division of Behavioral Health

Suspend
1/15/15

IN THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| DIVISION OF FAMILY SERVICES, | ) | File No. CN98-09957 |
| Petitioner, | ) | CPI Nos. 05-36981, 06-01607 |
| | ) | File No. CN97-08398 |
| v. | ) | CPI No. 05-36998 |
| | ) | File No. CN06-01363 |
| REBECCA SMITH, JAMES CROSSAN, | ) | CPI No.: 06-02158 |
| RAYMOND ANGELL, JAMES CROSSAN, SR., | ) | |
| And JULIA YOUNGBLOOD, | ) | |
| Respondents. | ) | |

## NOTICE OF MOTION

**TO:**   Shauna T. Hagan, Esquire
Aber, Goldlust, Baker & Over
702 N. King St., Ste.600
Wilmington, DE 19899-1675

Janice Tigani, Esquire
Gollatz, Griffin & Ewing, PC
1700 West 14th Street
Wilmington, DE 19806

Julia Youngblood
716 Clark St
New Castle, Delaware

Jeanne Hanson, Esquire
521 West Street
Wilmington, DE 19801

John J. Schreppler, II, Esquire, GAL
Artesian Resources, Inc.
664 Churchman's Road
Newark, DE 19702

James Crossan, Sr.
33 St. Augustine Rd.
Port Penn, DE 19731

**PLEASE TAKE NOTICE** that the attached Motion to Suspend Visitation and Contact will

be presented to the Family Court of Delaware for consideration at the Court's earliest convenience.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

JAMES R. ADAMS, I.D. #4066
PATRICIA DAILEY LEWIS, I.D. #2422
ANTHONY U. LONGO, I.D. #4118
TANISHA L. MERCED, I.D. #4436
Deputy Attorneys General
820 North French Street
Wilmington, Delaware 19801
(302) 577-8400
Attorneys for Division of Family Services

Dated: January 31, 2006

**IN THE FAMILY COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| DIVISION OF FAMILY SERVICES, | ) | File No. CN98-09957 |
| Petitioner, | ) | CPI Nos. 05-36981, 06-01607 |
| | ) | File No. CN97-08398 |
| v. | ) | CPI No. 05-36998 |
| | ) | File No. CN06-01363 |
| REBECCA SMITH, JAMES CROSSAN, | ) | CPI No.: 06-02158 |
| RAYMOND ANGELL, JAMES CROSSAN, SR., | ) | |
| And JULIA YOUNGBLOOD, | ) | |
| Respondents. | ) | |

**MOTION TO SUSPEND VISITATION AND CONTACT**

**COMES NOW**, the Division of Family Services (DFS), by and through the undersigned Deputy Attorney General, and respectfully requests this Honorable Court suspend visitation and contact between Destiny Crossan, DOB: 6/26/00, James Crossan, DOB: 7/19/97, Amber Angell, DOB: 5/19/94, and Brandon Angell, DOB: 12/26/95, and their mother, Rebecca Smith ("Mother") and grandmother, Julia Youngblood, and James and Destiny with their father, James Crossan ("Father"), and asserts the following in support thereof.

1.      This Court awarded DFS the *ex parte* custody of Destiny Crossan, DOB: 6/26/00, James Crossan, DOB: 7/19/97, Amber Angell, DOB: 5/19/94, and Brandon Angell, DOB: 12/26/95 on November 10, 2005. This Court has continued custody of these children with DFS to date.

2.      Previously, by adjudicatory order dated December 15, 2005, this Court ordered that DFS shall provide supervised visitation by Mother with the children, and shall provide supervised visitation of James and Destiny by Father, James Crossan.

3.      As detailed in the attached affidavit executed by Maisha Jones, the DFS social worker assigned to this matter, Mother's behavior and lack of compliance with her case plan concerns DFS. Mother has recently knowingly violated a no-contact order with James Crossan. She has refused to engage in substance abuse counseling despite its being recommended. Upon DFS's information and belief, domestic violence between the parents is ongoing. Moreover, there have been allegations of

drug sale and use by Ms. Smith and Mr. Crossan that occurred in the presence of the children.

4.  James Crossan has failed his last drug screening and has violated his probation.

5.  Serious allegations of physical, emotional and sexual abuse initiated this case. Dr. Sherman of the A.I. Dupont Behavioral Health Center, who recently evaluated these children, has grave concerns for their mental health, and believes that these children should have no contact with their mother or James Crossan at this time. The paternal grandmother is implicated in these allegations as well.

6.  DFS respectfully requests that all visitation and contact between Destiny Crossan, DOB: 6/26/00, James Crossan, DOB: 7/19/97, Amber Angell, DOB: 5/19/94, and Brandon Angell, DOB: 12/26/95, and their mother, Rebecca Smith, and paternal grandmother, Julia Youngblood, and between James and Destiny and their father, James Crossan, be suspended pursuant to 13 *Del. C.* §§ 728, 727(a), 723, and 722(a), because continuing even supervised visitation or even allowing contact of these children with Rebecca Smith, James Crossan and Julia Youngblood would not be in the children's best interests.

**WHEREFORE**, DFS respectfully requests that this Court suspend visitation and contact between Destiny Crossan, James Crossan, Amber Angell, and Brandon Angell, and Rebecca Smith and Julia Youngblood, and between James and Destiny and their father, James Crossan, because continued visitation and contact would not be in the children's best interests.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

JAMES R. ADAMS, I.D. #4066
PATRICIA DAILEY LEWIS, I.D. #2422
ANTHONY U. LONGO, I.D. #4118
TANISHA L. MERCED, I.D. #4436
Deputy Attorneys General
820 North French Street
Wilmington, Delaware 19801
Attorneys for Division of Family Services

Dated: January 3 1, 2006

## FAMILY COURT OF THE STATE OF DELAWARE
### IN AND FOR NEW CASTLE COUNTY

### AFFIDAVIT

| Petitioner<br>Division of Family Services | VS | Respondents,<br>Rebecca Smith, James<br>Crossan, & Julia Youngblood | File No.<br>CN98-09957,<br>CN97-08358,<br>CPI No. |
|---|---|---|---|

In the Interest of:  Destiny Crossan (6\27\00); James D Crossan (7\19\97); Amber Angell (5\19\94); Brandon Angell (12\9\95) & Raymond Angell (4\10\92)

| STATE OF DELAWARE | ) | |
|---|---|---|
| | ) | SS. |
| NEW CASTLE COUNTY | ) | |

**BE IT REMEMBERED**, that on the 26th day of January, 2006, personally appeared before me, and duly sworn according to law, does depose and say:

1. My name is Maisha J Jones.  I am a Master Family Service Specialist at the Division of Family Services. I am the worker assigned to Rebecca Smith and James Crossan.

2. Ms Smith became active with this agency with the claim of being a battered wife.  She was requesting assistance to protect her and her five children.

3. Family was placed in a safe house, which mother left without providing notification.  Ms Smith has refused to engage in any domestic violence programs, locate housing or employment.

4. There are allegations of physical, mental, and emotional abuse of the children by both Ms Smith and Mr. Crossan. Also allegations of sexual abuse by Mr. Crossan. Mother knowingly and willingly violated the No Contact Order with James Crossan.  There has been on going domestic violence between the parents. Paternal grandmother Julia Youngblood has been implicated in these allegations as well.

5. Ms Smith has a history of abuse of prescription drugs, was recommended for counseling but refused to engage.  There are allegations made that she and her husband have engaged in the use and selling illegal substance in the presents of the children. Mr. Crossan has failed his last drug screening, he has violated  probation and has been incarcerated three times since this case became active.

6. Children have been evaluated by CAC and A I Dupont's Behavioral Health Center, there is a concern that visits with the parents could be harmful to the children at this time

C:\Documents and Settings\maisha.jones\My Documents\mo.visit

7.  The Division of Family Services requests a stay of all visitations of Ms. Smith, Mr. Crossan and Ms Youngblood with the above named children until approved by a counselor.

8.  The information contained herein is true and correct to the best of my knowledge and belief.

DATED: January 26 2005

Maisha J Jones, Affiant

**SWORN TO AND SUBSCRIBED** before me the day and year aforesaid.

Notary

C:\Documents and Settings\maisha.jones\My Documents\mo.visit

IN THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

DIVISION OF FAMILY SERVICES,               )        File No. CN98-09957
        Petitioner,                        )        CPI Nos. 05-36981, 06-01607
                                           )        File No. CN97-08398
        v.                                 )        CPI No. 05-36998
                                           )        File No. CN06-01363
REBECCA SMITH, JAMES CROSSAN,              )        CPI No.: 06-02158
RAYMOND ANGELL, JAMES CROSSAN, SR.,        )
And JULIA YOUNGBLOOD,                       )
        Respondents.                        )

## O R D E R

**IT IS HEREBY ORDERED**, this _____ day of _____, 2006, that the DFS

Motion to Suspend Visitation and Contact and any responses thereto having been heard and

considered, said motion is **HEREIN GRANTED**. Visitation and contact between Destiny Crossan,

James Crossan, Amber Angell, and Brandon Angell, and their mother, Rebecca Smith, and paternal

grandmother, Julia Youngblood, and between James and Destiny and their father, James Crossan, is

hereby suspended.

**IT IS SO ORDERED.**

_____
**William L. Chapman, Jr., Judge**

xc:     John J. Schreppler, II, Esquire, GAL
        Janice Tigani, Esquire
        Shauna Hagan, Esquire
        Jeanne Hanson, Esquire
        Julia Youngblood
        James Crossan, Sr.
        James R. Adams, DAG
        Maisha Jones, DFS
        File

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on the ~~31~~ 1st day of ~~January,~~ February, 2006, s/he caused the attached

**MOTION TO SUSPEND VISITATION AND CONTACT** to be sent to the following person(s) in

the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Shauna T. Hagan, Esquire
Aber, Goldlust, Baker & Over
702 N. King St., Ste.600
Wilmington, DE 19899-1675

Jeanne Hanson, Esquire
521 West Street
Wilmington, DE 19801

Janice Tigani, Esquire
Gollatz, Griffin & Ewing, PC
1700 West 14th Street
Wilmington, DE 19806

John J. Schreppler, II, Esquire, GAL
Artesian Resources, Inc.
664 Churchman's Road
Newark, DE 19702

Julia Youngblood
716 Clark St
New Castle, Delaware

James Crossan, Sr.
33 St. Augustine Rd.
Port Penn, DE 19731

**MANNER OF DELIVERY:**

___X___ Two true copies via regular mail to each recipient

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

JAMES R. ADAMS, I.D. #4066
PATRICIA DAILEY LEWIS, I.D. #2422
ANTHONY U. LONGO, I.D. #4118
TANISHA L. MERCED, I.D. #4436
Deputy Attorneys General
820 North French Street
Wilmington, Delaware 19801
(302) 577-8400
Attorneys for Division of Family Services

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on the __1__ day of February, 2006, s/he caused the attached

**MOTION TO SUSPEND VISITATION AND CONTACT** to be sent to the following person(s) in

the form and manner indicated:

### NAME AND ADDRESS OF RECIPIENT(S):

Shauna T. Hagan, Esquire
Aber, Goldlust, Baker & Over
702 N. King St., Ste.600
Wilmington, DE 19899-1675

Jeanne Hanson, Esquire
521 West Street
Wilmington, DE 19801

Janice Tigani, Esquire
Gollatz, Griffin & Ewing, PC
1700 West 14th Street
Wilmington, DE 19806

John J. Schreppler, II, Esquire, GAL
Artesian Resources, Inc.
664 Churchman's Road
Newark, DE 19702

Julia Youngblood
716 Clark St
New Castle, Delaware

James Crossan, Sr.
33 St. Augustine Rd.
Port Penn, DE 19731

### MANNER OF DELIVERY:

__X__ Two true copies via regular mail to each recipient

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*[signature]*

JAMES R. ADAMS, I.D. #4066
PATRICIA DAILEY LEWIS, I.D. #2422
ANTHONY U. LONGO, I.D. #4118
TANISHA L. MERCED, I.D. #4436
Deputy Attorneys General
820 North French Street
Wilmington, Delaware 19801
(302) 577-8400
Attorneys for Division of Family Services